**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION**

MARYVILLE FAIRPARK OPCO LLC      )    **CASE NO. 3:23-cv-00172**
     307 N 5th Street      )
     Maryville, TN 37802,      )
     )
        Petitioner/Plaintiff,      )
     )
        vs.      )
     )
UNITED STATES SMALL BUSINESS      )
ADMINISTRATION      )
     409 3rd Street, SW      )
     Washington, DC 20416,      )
     )
Isabella Casillas Guzman, in her official capacity      )
as Administrator of the Small Business      )
Administration      )
     409 3rd Street, SW      )
     Washington, DC 20416,      )
     )
Janet Yellen, in her official capacity as United      )
States Secretary of Treasury      )
     1500 Pennsylvania Avenue, NW      )
     Washington, DC 20220,      )
     )
     - AND -      )
     )
The United States of America,      )
     c/o United States Attorney General      )
     Assistant Attorney General for      )
     Administration      )
     950 Pennsylvania Avenue, NW      )
     Washington, DC 20530,      )
     )
     c/o United States Attorney for the Eastern      )
     District of Tennessee      )
     800 Market St., Suite 211      )
     Knoxville, TN 37902,      )
     )
        Respondents/Defendants.      )

## COMPLAINT AND PETITION FOR REVIEW

Petitioner/Plaintiff Maryville Fairpark OPCO LLC ("**Petitioner**") hereby files this Complaint and Petition for Review of the Orders of the Office of Hearings and Appeals ("**OHA**") denying Petitioner's appeal of a Paycheck Protection Program ("**PPP**") loan review decision issued by the U.S. Small Business Administration ("**SBA**"), and state as follows:

## OVERVIEW OF DISPUTE

1. This dispute challenges both the authority of SBA to limit PPP loans to $20,000,000 per corporate group and the application of that limitation to Petitioner itself.

2. Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**") to corral the economic devastation caused by the COVID-19 pandemic. 15 U.S.C. §§ 9001, *et seq.*

3. Congress enacted the CARES Act to protect the millions of Americans employed by small businesses.

4. Part of the CARES Act included the PPP, which provided SBA with the funding and authority to operate a loan program designed to financially assist small businesses with their cash-flow during the COVID-19 pandemic. *See* 15 U.S.C. § 636.

5. "Specifically, the CARES Act amends section 7(a) of the Small Business Act, a preexisting statutory scheme that authorizes the SBA to issue loans, and guarantee loans made by private lenders, to qualifying businesses." *Daniel T.A. Cotts PLLC v. American Bank, N.A.*, 2021 WL 2196636, at *1 (S.D. Tex. 2021) (citing 15 U.S.C. § 636(a); 13 C.F.R. § 120.2(a)).

6. Pursuant to its delegated authority, SBA issued an interim final rule ("**IFR**") in April 2020 to implement the PPP. *Id.* (citing IFR, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 FR 20811 (April 15, 2020)). Section 1106 of the CARES Act "provides that a borrower's indebtedness under a PPP loan will be forgiven to the extent that the

borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan's origination." *Camelot Banquet Rooms, Inc. v. SBA*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (citing IFR, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 FR 20,811, 20,813-14 (Apr. 15, 2020)).

7.      Congress amended the CARES Act numerous times to address developing circumstances, including the following:

      a.      On April 24, 2020, then-President Donald Trump signed the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139), which provided additional funding and authority for the PPP.

      b.      On June 5, 2020, then-President Trump signed the Paycheck Protection Program Flexibility Act of 2020 (the "**Flexibility Act**") (Pub. L. 116-142), which changed key provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. Section 3(d) of the Flexibility Act provided that the amendments relating to PPP loan forgiveness and extension of the deferral period for PPP loans were effective as if included in the CARES Act, which meant they were retroactive to March 27, 2020.

      c.      On July 4, 2020, Public Law 116-147 extended SBA's authority to guarantee PPP loans to August 8, 2020.

      d.      On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "**Economic Aid Act**") extended the authority to make PPP loans through March 31, 2021 and revised certain PPP requirements.

8.    Notwithstanding the numerous amendments to the details of the PPP program, the only maximum borrowing limit Congress placed on loan amounts was to limit loans to no more than $10 million for a single eligible borrower.   CARES Act § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii).

9.    Despite extensive involvement in and amendment of the PPP program eligibility details, whether in the CARES Act itself or in any of the subsequent amendments, Congress never adopted a limitation in the form of a maximum cap that a so-called "corporate group" might borrow or seek forgiveness of, and did not even mention corporate groups as a category.

10.    Instead, Congress repeatedly made significant appropriation increases to fund additional PPP loans to support small business concerns throughout the country to survive and retain their employees during the COVID-19 pandemic.

11.    Nonetheless, on April 30, 2020, SBA issued another IFR (referred to as "**IFR #7**"), with an effective date of May 4, 2020, purporting to place a $20,000,000 limitation on the amount of PPP loans that businesses in a "single corporate group" can receive.

12.    IFR #7 provided, in part:

> To preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.

85 FR 26324-01, 26325, 2020 WL 2099740 (footnote omitted).

13.    The concept of a borrowing limit upon corporate groups was solely a construct of SBA in IFR #7.

## PETITIONER'S PPP LOAN

14.     In or about March 2021, Petitioner applied for a first-draw PPP loan (the "**Maryville Fairpark Application**").

15.     On March 27, 2021, SBA approved the Maryville Fairpark Application in the amount of $350,000.00, under Loan No. 1470638709 (the "**PPP Loan**").

16.     On or about August 4, 2022, Petitioner applied to SBA for loan forgiveness.

## SBA'S DECISION ON PETITIONER'S APPLICATION FOR FORGIVENESS OF ITS PPP LOAN

17.     On November 1, 2022, SBA issued its Decision (the "**Decision**") denying Petitioner's request for loan forgiveness and sent the Decision to Petitioner's lender, Signature Bank.  The Decision stated, in part:

> SBA has determined that the borrower was ineligible for the PPP loan amount received. The reason(s) for SBA's decision is as follows:

> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $20,000,000 of First Draw PPP loans in the aggregate.

> Ownership by Naftali Zanziper and Simcha Hyman comprise of one single corporate group, Naftali Simcha et al, consisting of 343 entities, of which 84 entities received First Draw PPP loans totaling $44,983,180.44. The 84 entities meet SBA's alternative size standard and were eligible for PPP funding.

> However, of the 84 loans within the Naftali Simcha et al corporate group 48 First Draw loans exceed the limitation of $20,000,000 in aggregate to a single corporate group and were disbursed after April 30, 2020. Therefore, the Borrowers of these 48 First Draw loans do not meet eligibility requirements for forgiveness of the Paycheck Protection Program Loan.

18.     Petitioner was one of 48 entities owned by Naftali Zanziper and Simcha Hyman for which SBA denied requests for forgiveness of PPP loans.

## PETITIONER'S APPEAL TO OHA

19.     On December 7, 2022, Petitioner appealed the Decision to OHA, seeking a reversal of the Decision.

20.     In its Appeal Petition, Petitioner argued that OHA should reverse the Decision because the $20,000,000 limit purportedly imposed by IFR #7 is improper because it is not found in the CARES Act or in the Economic Aid Act, and IFR #7 was enacted in violation of the rule-making requirements of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* ("**APA**"). Petitioner also argued that it does not share a "common parent" with the 47 other companies, is not part of a "corporate group" with any entity and, thus, is not subject to any purported $20,000,000 corporate group limitation for PPP loans in IFR #7 or otherwise.

21.     On December 22, 2022, Petitioner, the other 47 companies seeking review of the same Decision, and SBA entered into a joint motion to consolidate the 48 pending appeals in front of two OHA Administrative Judges.  Both Judges subsequently granted that request.

22.     On February 6, 2023, Petitioner, the other 47 companies seeking review of the same Decision, and SBA entered into a joint stipulation of fact and stipulated Administrative Record in the consolidated appeals.

23.     On March 3, 2023, SBA filed its Responses to the Appeal Petition, arguing that the Decision should be affirmed because Petitioner is part of a "corporate group" subject to a $20,000,000 limit in PPP funds.  Specifically, SBA argued that (1) it has broad discretion to take all necessary actions related to the making of loans, including enacting the IFR at issue; (2) a "plain" reading of "common parent" includes two individuals with equal ownership; (3) it would be unfair for Petitioner to receive PPP funds because it would take away funds from other small business; and (4) Petitioner and the other 47 entities are owned by a "common parent."

## OHA'S ORDERS AFFIRMING THE DECISION

24.     On March 8, 2023, OHA issued an Order affirming the Decision (the "**March 8 Order**").

25.     In the March 8 Order, OHA explained the requirement that, to be eligible for a PPP loan, a small business together with its affiliates must meet SBA's size standard rules.  (*See* March 8 Order, pp. 3-6.)

26.     The March 8 Order acknowledges that Petitioner together with its affiliates met SBA's alternative size standard test and thus was eligible for the PPP loan.  (*Id.*, p. 9.)

27.     OHA also found that "Section 1114 of the CARES Act grants the SBA Administrator emergency rulemaking authority and provides that no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b)." (*Id.*, p. 11 (citing 15 U.S.C. § 9012).)

28.     OHA also found that the "broad authority" given by Congress to the SBA "to take actions that 'are necessary or desirable in making…loans'" under 15 U.S.C. § 634(b)(6)-(7) "naturally extends to the PPP lending program." (*Id.*, p. 11 (citing *Camelot Banquet Rooms, Inc. v. SBA*, 2022 WL 221616 (7th Cir. 2022).)  Thus, according to OHA, SBA's notice and comment requirements under the Administrative Procedure Act are waived. (*Id.*)

29.     Next, OHA disagreed with Petitioner's argument that the IFR is improper because neither the CARES Act nor the Economic Aid Act impose a limit on PPP loans for "corporate group."  In reaching that conclusion, OHA determined that it has no authority to assess the validity of a regulation and, instead, is bound by all SBA regulations.  (*Id.*, pp. 11-12.)

30.     In the March 8 Order, OHA determined that Petitioner is part of a "corporate group" with a "common parent" under the IFR.  (*Id*., p. 18.)

31.     OHA attempted to explain SBA's affiliation rules found in 13 C.F.R. § 121.301(f). (*See id*., pp. 14-17).  OHA explained that there are "four principles that can establish an affiliate relationship between a PPP borrower and another entity: 1) Equity ownership; 2) Stock options, convertible securities, and agreements to merge; 3) Management; and 4) Identity of interest."  (*Id*.)

32.     OHA acknowledged that "Appellants [including Petitioner here] were deemed a small-business concern after application of SBA's alternative size standards.  This means the Appellants, as a group [which includes Petitioner here], were eligible for one of SBA's 7(a) loan programs, to-wit: PPP."  (*Id*., p. 16)  According to OHA, "The sole issue in dispute is whether the $20,000,000.00 PPP corporate group maximum loan limitation is applicable to the Appellants [including Petitioner here]." (*Id*.)

33.     Next, OHA found that SBA exercised its authority under Section 1102 of the CARES Act in setting the $20,000,000 limit in IFR #7. (*Id*., p. 17.)

34.     According to OHA, because Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses, and because the CARES Act subjected PPP borrowers to SBA's 7(a) program affiliation rules, "The Appellants should have been aware, through review of existing SBA 7(a) loan program regulations/policy, that by qualifying as a small-business concern after application of the affiliation rules, the loan limitations set forth in IFR #7 would be applied to them, as a group.  Here, that limitation was set at $20,000,000.00."  (*Id*. p. 17.)  Then, in a nonsequitur, OHA concluded: "As such, the meaning of corporate group in IFR #7 has the same meaning as affiliate under existing 7(a) loan program policy." (*Id*.)

35. OHA also found that although "SBA did not explicitly define the term corporate group within IFR #7 (or any other PPP related publication), [] the meaning of the term can easily be derived from other SBA 7(a) loan program policy existing prior to the Appellants receipt of these PPP loans." (*Id*., p. 18.) OHA explained, "This policy can be seen through a plain reading of SOP 50 10 5(K) and Section 1102 of the CARES Act. When put together, the same clearly provide that when a 7(a) loan program applicant is required to affiliate entities to meet the definition of a small-business concern, the affiliated group of entities is carried forward when considering if any authorized maximum loan limitation has been reached." (*Id*.)

36. Nonetheless, neither OHA nor SBA has ever provided any explanation for why the term "corporate group" as used in IFR #7 would or should have the same meaning as the different term "affiliate" under the 7(a) loan policy program, or where or how SOP 50 10 5(K) and Section 1102 of the CARES Act results in those two different terms having the same meaning.

37. Denying the Appeal Petition, OHA concluded:

Overall, the Appellants are affiliates of each other, as defined by 13 C.F.R. § 121.301(f)(1-4). As of the date of applying for the PPP loans at issue, together with its affiliates, the Appellants met the small-business concern alternative size standard. 13 C.F.R. § 121.301(a-b). (Joint Stipulations). The Administrator created a maximum loan limitation for PPP by limiting SBAs guarantee of PPP loans exceeding $20,000,000.00 for corporate groups. Section 1102 of the CARES Act. As affiliation exists among the Appellants, the PPP $20,000,000.00 corporate group maximum loan limitation applies to each Appellant, as if all Appellants were a single business, to-wit: a corporate group. SOP 50 10 5(K), Part 2, Section B, Ch 1: Basic 7(a) Loans, 1.c. At the time of applying for the PPP loans, the aggregate amount of the SBA portions of all PPP loans to the Appellants, including all affiliates as defined in 13 C.F.R. § 121.301(f), exceeded the $20,000,000.00 maximum loan limitation otherwise authorized by IFR #7. See 15 U.S.C. 636(a)(36)(E)(ii). The Appellants are a corporate group and were ineligible for the PPP loans at issue.

(*Id*. p. 18.)

38. On March 17, 2023, Petitioner sought reconsideration of the March 8 Order. Petitioner argued that reconsideration was proper because nothing in IFR #7, SBA's Rules, or in

any other source or guidance provide a definition of "corporate group" or "common parent." Additionally, nothing in IFR #7, SBA Rules, or in any other source or guidance suggests that SBA's affiliation rules apply to IFR #7.

39.     In its April 4, 2023 Responses to Petitioner's Motion for Reconsideration, SBA argued that OHA should affirm the March 8 Order because there was no "clear error" in that decision.

40.     On April 10, 2023, OHA affirmed its March 8 Order denying the Appeal Petition (the "**April 10 Order**"), setting forth the same bases for denial as the March 8 Order.

41.     As to the interpretation of "corporate group" and "common parent" under IFR #7, OHA restated its prior unsupported findings that:

- "The Petitioners should have been aware, through review of existing SBA 7(a) loan program regulations/policy, that by qualifying as a small-business concern after application of the affiliation rules, the loan limitations set forth in IFR #7 would be applied to them, as a group."

- "SBA did not explicitly define the term corporate group within IFR #7 (or any other PPP related publication), but the meaning of the term can easily be derived from other SBA 7(a) loan program policy existing prior to the Petitioners receipt of these PPP loans. This policy can be seen through a plain reading of SOP 50 10 5(K) and Section 1102 of the CARES Act.

(April 10 Order, p. 21.)

## PETITIONER AND THE OTHER 47 ENTITIES ARE NOT PART OF THE SAME "CORPORATE GROUP"

42.     Petitioner is a separate and distinct operating company from the other 47 entities for which SBA denied loan forgiveness.

43.     Petitioner itself is not a holding or parent company.

44.     Petitioner itself does not have a holding or parent company.

45.     Petitioner is owned by two individuals, Simcha Hyman and Naftali Zanziper, who are unrelated to one another, and neither of whom holds a majority of the membership interests in any of the other 47 entities for which SBA denied loan forgiveness.

46.     Because Petitioner does not have a parent company, it cannot share a common parent with any of each other or the other 47 entities for which SBA denied loan forgiveness.

47.     The ownership of the 48 entities, including Petitioner, is as follows:[1]

|  | Entity Name | EIN | Ownership, Simcha Hyman | Ownership, Naftali Zanziper |
|---|---|---|---|---|
| 1 | Accordius Health at Asheville LLC | 83-1067371 | 50% | 50% |
| 2 | Accordius Health at Bay Pointe LLC | 84-1834295 | 50% | 50% |
| 3 | Accordius Health at Brevard LLC | 82-4995597 | 50% | 50% |
| 4 | Accordius health at Charlotte LLC | 35-2635108 | 50% | 50% |
| 5 | Accordius Health at Concord LLC | 84-3019363 | 50% | 50% |
| 6 | Accordius Health at Greensboro LLC | 83-2892228 | 50% | 50% |
| 7 | Accordius Health at Hendersonville LLC | 84-1860789 | 50% | 50% |
| 8 | Accordius Health at Lynchburg LLC | 84-1842593 | 50% | 50% |
| 9 | Accordius Health at Midwood LLC | 83-0920689 | 50% | 50% |
| 10 | Accordius Health at Monroe LLC | 83-0911497 | 50% | 50% |
| 11 | Accordius Health at Mooresville LLC | 83-0911539 | 50% | 50% |
| 12 | Accordius Health at River Pointe LLC | 84-1873147 | 50% | 50% |
| 13 | Accordius Health at Rose Manor LLC | 83-4379870 | 50% | 50% |
| 14 | Accordius Health at Statesville LLC | 83-1266854 | 50% | 50% |
| 15 | Accordius Health at Wilkesboro LLC | 84-3019410 | 50% | 50% |
| 16 | Accordius Health at Wilson LLC | 84-3034457 | 50% | 50% |
| 17 | Accordius Health at Winston Salem LLC | 82-1950692 | 50% | 50% |
| 18 | Anderson SC Opco LLC | 84-2229236 | 50% | 50% |
| 19 | Carolina Pines at Asheville LLC | 83-1070351 | 50% | 50% |
| 20 | Carolina Pines at Greensboro LLC | 83-2910607 | 50% | 50% |
| 21 | Countryside Center for Rehabilitation and Nursing LLC | 82-4099791 | 50% | 50% |

[1] The entry relevant to Petitioner is emphasized.

| | Entity Name | EIN | Ownership, Simcha Hyman | Ownership, Naftali Zanziper |
|---|---|---|---|---|
| 22 | Covington TN Opco LLC | 82-4521413 | 50% | 50% |
| 23 | Fair Oaks Health And Rehabilitation LLC | 84-4045154 | 50% | 50% |
| 24 | Farthing Mayfield KY Opco LLC | 84-3805896 | 50% | 50% |
| 25 | Greenville KY Opco LLC | 84-1905340 | 50% | 50% |
| 26 | Hopkinsville KY Opco LLC | 84-2845834 | 50% | 50% |
| 27 | Knoxville Opco LLC | 84-1934790 | 50% | 50% |
| 28 | Leitchfield KY Opco LLC | 84-2876916 | 50% | 50% |
| 29 | Loudon Opco LLC | 84-1934811 | 50% | 50% |
| 30 | Madisonville Health and Rehabilitation LLC | 83-1038279 | 50% | 50% |
| *31* | *Maryville Fairpark Opco LLC* | *84-1950741* | *50%* | *50%* |
| 32 | Maryville Jamestown Opco LLC | 84-1970538 | 50% | 50% |
| 33 | Mayfield KY Opco LLC | 84-1970598 | 50% | 50% |
| 34 | Mount Pleasant TN Opco LLC | 84-3554353 | 50% | 50% |
| 35 | Paducah Center for Health and Rehabilitation LLC | 82-4099870 | 50% | 50% |
| 36 | Pelican Health at Asheville LLC | 83-3731856 | 50% | 50% |
| 37 | Pelican Health at Charlotte LLC | 83-3863893 | 50% | 50% |
| 38 | Pelican Health Norfolk LLC | 84-3460391 | 50% | 50% |
| 39 | Pelican Health Randolph LLC | 84-3034473 | 50% | 50% |
| 40 | Pelican Health Reidsville LLC | 84-2982789 | 50% | 50% |
| 41 | Pelican Health Rutherfordton LLC | 84-3132402 | 50% | 50% |
| 42 | Pelican Health Thomasville LLC | 84-3055734 | 50% | 50% |
| 43 | Princeton KY Opco LLC | 84-2882729 | 50% | 50% |
| 44 | Red Boiling Springs TN Opco LLC | 84-2302627 | 50% | 50% |
| 45 | Russellville KY Opco LLC | 84-2882747 | 50% | 50% |
| 46 | The Citadel at Myers Park LLC | 83-3882594 | 50% | 50% |
| 47 | The Citadel at Winston Salem | 83-3904410 | 50% | 50% |
| 48 | The Citadel Elizabeth City LLC | 83-4298447 | 50% | 50% |

48.     Because the above 48 entities do not have a "common parent," they do not constitute a "single corporate group" for purposes of any purported $20,000,000 limitation on PPP loans.

49.     None of the above 48 entities was owned at any time by a corporation, any other type of entity, or any parent.

50. Upon its review, including the information relating to the "common parent" issue, Signature Bank recommended approval of Petitioner's loan forgiveness request.

51. The information set forth in the chart above showing the ownership of the 48 entities was available to Petitioner's lender at the time it recommended approval of Petitioner's loan forgiveness requests.

## PETITIONER EXHAUSTED ADMINISTRATIVE REMEDIES

52. On November 7, 2022, Petitioner received from Signature Bank a copy of SBA's Decision.

53. Petitioner timely appealed SBA's Decision on December 7, 2022, within 30 days of their receipt of SBA's Decision.

54. OHA issued its decisions affirming SBA's Decision on March 8, 2023, and April 10, 2023.

55. The required 30 days has elapsed since the April 10 Order and, therefore, this appeal is ripe and timely.

56. Petitioner has exhausted administrative remedies prior to filing this Complaint and Petition.[2]

57. In light of OHA's Orders, Petitioner also has begun repaying the PPP Loans.

## PARTIES

58. Petitioner is a skilled nursing facility located in Maryville, Tennessee, and organized as a limited liability company.

59. Respondent/Defendant SBA is a federal agency created and authorized pursuant to 15 U. S.C. § 633, *et seq*. Under the CARES Act, SBA administers the PPP.

---

[2] The other 37 entities that are subject to the OHA Orders are filing separate appeals of those Orders. The remaining 10 companies' appeals to federal court from OHA are not yet ripe.

60.     Respondent/Defendant Isabella Casillas Guzman is the Administrator of SBA and is named as a respondent only in her official capacity.

61.     Because she is the officer with final authority for administering the PPP within SBA, Administrator Guzman is a proper respondent/defendant for causes of action brought under the Administrative Procedures Act ("APA").  *See* 5 U.S.C. § 702.

62.     Respondent/Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is named as respondent only in her official capacity.

63.     Because she is the officer with final authority on all matters relating to the Department of Treasury consulting with SBA for the implementation of the PPP, Secretary Yellen is a proper respondent/defendant for causes of action brought under the APA.  *See* 5 U.S.C. § 702.

64.     Defendant United States of America is a proper defendant in APA cases.  *See* 5 U.S.C. § 702.

65.     SBA, Isabella Casillas Guzman as Administrator of SBA, Janet Yellen as Secretary of the United States Department of Treasury, and the United States of America are referred to collectively as "Respondents."

## VENUE AND JURISDICTION

66.     This action arises out of the arbitrary, capricious, and clear error of facts and law in the SBA's Decision, and OHA's March 8 Order and April 10 Order affirming that Decision.

67.     Jurisdiction is proper under 28 U.S.C. § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States, namely the CARES Act and the APA.

68.     Jurisdiction also is proper under 15 U.S.C. § 634(b)(1).

69.     As detailed above, Congress enacted the CARES Act to increase eligibility and to make PPP loans available to any business concern.  SBA later improperly restricted those businesses eligible for receipt of PPP loans through IFR #7.

70.     Venue is proper in the United States District Court for the Eastern District of Tennessee under 28 U.S.C. § 1391 as the PPP Loan's proceeds were remitted to locations within this District.

71.     SBA's review and denial of Petitioner's appeal through OHA became final on May 10, 2023, 30 days after service of OHA's April 10 Order. *See* 13 C.F.R. § 134.1211(b).

72.     Petitioner is entitled to judicial review of SBA's Decision. 13 C.F.R. § 134.1201(d) ("An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a Federal district court."); § 134.1211(g) ("***Appeal to Federal district court***. Final decisions may be appealed to the appropriate Federal district court only") (emphasis in original)).

## STANDARD OF REVIEW

73.     Pursuant to the APA, 5 U.S.C. §§ 701-06, a court reviewing a final agency action must "hold unlawful and set aside agency action, findings, and conclusions to be found to be… (A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

74.     Section 704 of the APA states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

75.     OHA's March 8 Order denying Petitioner's appeal meets the requirements of final agency action subject to review.

76.     OHA's April 10 Order denying Petitioner's appeal meets the requirements of final agency action subject to review.

77.     A court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). However, a "court must

satisfy itself that the agency 'considered the relevant factors and explained the facts and policy concerns on which it relied, and [that] those facts have some basis in the record.'" *Larry Grant Const. v. Mills*, 956 F. Supp. 2d 93 (D.D.C. 2013) (quoting *Nat'l Treasury Employees Union v. Horner*, 854 F.2d 490, 498 (D.C. Cir. 1988)).

78. Here, SBA's enactment of IFR #7 violated SBA's rulemaking authority, was arbitrary and capricious, constituted an abuse of discretion, and was not in accordance with law.

79. Additionally, SBA's Decision and OHA's March 8 and April 10 Orders must be set aside and reversed, including their findings and conclusions, because they are arbitrary and capricious, constitute an abuse of discretion, and are not in accordance with law.

## COUNT I
## ADMINISTRATIVE PROCEDURE ACT
## SBA EXCEEDED STATUTORY AUTHORITY IN ENACTING IFR #7

80. Petitioner incorporates by reference the allegations set forth in paragraphs 1-79 above, as though restated here.

81. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

82. In enacting rules and regulations, Respondents may only exercise authority consistent with the authority conferred by statute. *See, e.g.*, *City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013).

83. IFR #7 exceeds Respondents' authority under the statutes it purports to implement because the IFR would limit SBA loans in a way that is contrary to the CARES Act and the Economic Aid Act.

84.     Specifically, the only monetary limitation Congress placed on PPP loan amounts was to limit them to no more than $10 million for a single eligible borrower.  CARES Act § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii).

85.     Congress never adopted a loan limitation in the form of a cap on how much money a so-called "corporate group" might borrow.

86.     In the IFR, however, SBA itself purported to impose an aggregate limit of $20,000,000 on PPP loans that could be obtained by a single undefined "corporate group," despite that limitation appearing nowhere in the CARES Act, the Economic Aid Act, or any other applicable legislation.

87.     That purported $20,000,000 "corporate group" limitation would result in PPP funds that would be available to qualifying small businesses (like Petitioner) being unavailable by agency fiat, irrespective of whether or not the funds existed for such a loan.

88.     The purported $20,000,000 "corporate group" limitation is not authorized by any statute.

89.     IFR #7 is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA. 5 U.S.C. § 706(2)(C).

90.     Respondents' violation of the APA in implementing IFR #7 has caused and causes ongoing harm to Petitioner and other small businesses.

91.     Thus, IFR #7 must be vacated and set aside and not used as a basis to refuse Petitioner's request for forgiveness of its PPP Loan.

**COUNT II**
**ADMINISTRATIVE PROCEDURE ACT**
**SBA VIOLATED ITS RULEMAKING OBLIGATIONS WHEN IT ENACTED IFR #7**

92.     Petitioner incorporates by reference the allegations set forth in paragraphs 1-91 above, as though restated here.

93. Under the APA, whenever an agency promulgates a rule that intends to create new law, rights, or duties, it must engage in a process known as notice-and-comment rulemaking.

94. There are three steps involved in that rulemaking process:

    a.    First, the agency must publish a notice of proposed rulemaking in the Federal Register.

    b.    Second, the agency must afford interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments.

    c.    Third, after considering the relevant matter presented, the agency must incorporate in the rules adopted a concise general statement of the rules' basis and purpose.

95. SBA did not undertake any of those steps with respect to IFR #7.

96. Thus, SBA lacks authority to impose IFR #7's purported $20,000,000 limit, IFR #7 must be vacated and set aside, and it may not used as a basis to refuse Petitioner's request for forgiveness of its PPP Loan.

## COUNT III
## SBA'S DETERMINATION THAT PETITIONER IS INELIGIBLE FOR LOAN FORGIVENESS BASED ON IFR #7 HAS NO BASIS IN FACT, AND IS ARBITRARY AND CAPRICIOUS, AN ABUSE OF DISCRETION, AND OTHERWISE NOT IN ACCORDANCE WITH APPLICABLE LAW

97. Petitioner incorporates by reference the allegations set forth in paragraphs 1-96 above, as though restated here.

98. The purported $20,000,000 corporate group limitation on PPP loans was SBA's sole basis for refusing to forgive Petitioner's PPP Loan.

99.     OHA recognized that the sole issue in dispute is whether the $20,000,000.00 PPP corporate group maximum loan limitation is applicable to Petitioner (and the other entities challenging SBA's Decision).

100.    Even if IFR #7 were valid and enforceable generally, it was applied improperly to Petitioner's PPP Loan and request for forgiveness.

101.    IFR #7 provides that "businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent," and if those businesses are majority owned by a "common parent," they are subject to an aggregate limitation of $20,000,000 in PPP loans.

102.    Nothing in the IFR itself, or in any other document, provides any guidance on the meaning of the term "common parent" as used in the IFR.

103.    Without guidance defining the term "common parent," the plain meaning – *i.e.*, a common parent company – must be applied to determining whether two or more companies constitute a "corporate group."  *See, e.g.*, *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1738 (2020) (courts "normally interpret[] a statute in accord with the ordinary public meaning of its terms at the time of its enactment"); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

104.    Using the plain meaning of the term "common parent," the record is devoid of any support for a finding that Petitioner shares a common parent with any other entity and, therefore, whether it is part of a "corporate group" with any other entity.

105.    Although nothing in SBA #7 defines the term "common parent," SBA argued to OHA that OHA should disregard the term's plain meaning and, instead, find that equal ownership by two individuals, neither of whom holds a majority interest in Petitioner, constitutes a "common parent."  SBA cited no authority to support such a definition, and adopting it required OHA to disregard IFR #7's plain language in favor of one SBA impermissibly contrived for purposes of this appeal.

106.    Not only does SBA's preferred interpretation find no support in the IFR #7's plain language, but it also violates at least two rules of statutory construction: (1) specific language used in a statute or rule determines the intent of that statute or rule; and (2) use of different words in similar contexts is presumed to require different meanings to attach to those different words.

107.    Rules of statutory interpretation apply when interpreting IFR #7. *See Cont. Servs., Inc. v. United States*, 104 Fed. Cl. 261, 275 (2012).

108.    The fundamental rule of statutory interpretation is that one must first look to the specific language of the statute to determine congressional intent.  *See In re Perelman*, 419 B.R. 168, 175 (Bankr. E.D.N.Y. 2009).  And the cardinal principle of statutory construction is that Congress says in a statute what it means and means in a statute what it says.  *See id*. at 174 (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).[3]

---

[3] This rule is as well-settled as it is long-standing. *See, e.g.*, *Kellogg Brown & Root Servs., Inc. v. United States*, 575 U.S. 650, 660 (2015) ("Only two months after enacting the [Wartime Suspension of Limitations Act], Congress passed a tolling statute for violations of the antitrust laws…now indictable or subject to civil proceedings. Congress obviously could have included a similar 'civil proceedings' clause in the WSLA, but it did not do so."); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency*, 846 F.3d 492, 514 (2d Cir. 2017) ("If Congress had thought about the question and meant for Section 502(12) of the Clean Water Act to refer to individual water bodies, it could have referred to something like 'any addition of any pollutant to a navigable water from any point source,' or 'any addition of any pollutant to any navigable water from any point source.'"); *In re U.S. for an Ord. Authorizing Installation & Use of a Pen Reg.*, 415 F. Supp. 2d 211, 214-15 (W.D.N.Y. 2006) ("One would assume that if Congress wanted

109.     A second rule of construction provides that use of different words in the context of statutes dealing with the same subject matter indicates a difference in legislative intent.  *See W. Sur. Co. v. State*, 1999 WL 1289053, *2 (Conn. Super. Ct. Dec. 15, 1999).  Collecting numerous cases standing for the same proposition, one federal appellate court explained as follows:

> It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words. Congress's explicit decision to use one word over another in drafting a statute is material. It is a decision that is imbued with legal significance and should not be presumed to be random or devoid of meaning. Even words with remarkably similar definitions can still convey a unique or distinct meaning or flavor from words that are similar or even synonymous in nature because of their differing tone or usage within a sentence.

*S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) (collecting cases; citations omitted).

110.     Applying both those rules here requires a determination that SBA's interpretation of the term "common parent" must be rejected.

111.     There is no definition, rule, or guidance construing the term "common parent" as used in IFR #7.

112.     However, SBA chose to use that phrase ("common ***parent***") instead of, for example, "common ***owner***" or "common ***management***."

113.     If SBA wanted IFR #7 to apply to situations involving "common ownership" or "common management" to result in a finding of a "single corporate group," SBA could have – and would have – said so.

---

judges to grant the disclosure of real time cell site data by importing the procedural rules and safeguards of [another statute], Congress could have and would have clearly said so. Congress did not. The familiar 'easy-to-say-so-if-that-is-what-was-meant' rule of statutory interpretation has full force here.").

114.    For example, in 13 CFR § 121.103, SBA does use the terms "common ownership" and "common management" when defining affiliation generally.  It does not use those terms in IFR #7.

115.    Likewise, in 13 CFR § 121.301 SBA provides specific definitions of "[a]ffiliation based on ownership" and "[a]ffiliation based on management."  13 CFR § 121.301(f)(1), (3).

116.    That SBA chose not to use the affiliation terms and definitions from the CFR in IFR #7, where it instead used the term "common parent," triggers the *different words mean different things* rule of construction.

117.    There is no definition of "common parent" that fits the definition SBA seeks to impose here on the issue of Petitioner's PPP Loan that is permitted within recognized rules of statutory construction.

118.    Petitioner does not share a "common parent" with any other entity.

119.    Because Petitioner does not share a "common parent" with any other entity, there is no legal basis to hold Petitioner to the purported $20,000,000 limitation on PPP loans for corporate groups as set forth in IFR #7.

120.    Thus, Petitioner is entitled to a reversal of SBA's denial of its request for forgiveness of its PPP Loan and OHA's affirmance of SBA's Decision, and in their place an order granting forgiveness of Petitioner's PPP Loan in its entirety.

## COUNT IV
## ATTORNEYS' FEES

121.    Petitioner incorporates by reference the allegations set forth in paragraphs 1-120 above, as though restated here.

122.    Recovery of attorneys' fees for the relief requested in this Complaint and Petition for review is authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412.

123.     As a result of Respondents' actions contrary to fact and law, Petitioner has been required to obtain legal counsel to bring this suit; therefore, it is entitled to reasonable and necessary attorneys' fees that may be awarded by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner/Plaintiff Maryville Fairpark OPCO LLC prays for judgment against Respondents/Defendants United States Small Business Administration, Isabella Casillas Guzman (in her official capacity as Administrator of the Small Business Administration), Janet Yellen (in her official capacity as United States Secretary of Treasury), and the United States of America as follows:

1.     A declaration that IFR #7, 85 FR 26324-01, 2020 WL 2099740 should be and is vacated and set aside.

2.     A declaration that IFR #7, 85 FR 26324-01, 2020 WL 2099740 may not be used as a basis to refuse Petitioner's request for forgiveness of its PPP Loan, Loan Number 1470638709, in the amount of $350,000.00.

3.     A reversal of SBA's November 1, 2022, Decision denying Petitioner's request for loan forgiveness, and OHA's March 8, 2023, and April 10, 2023 Orders affirming SBA's Decision and, as a result, an order directing SBA to forgive Petitioner's PPP Loan, Loan Number 1470638709, in the amount of $350,000.00.

4.     An Order requiring Respondents to reimburse Petitioner for all sums repaid (and that will be repaid) on the PPP Loan, plus interest, in an amount to be proven.

5.     Attorneys' fees.

6.     And such other and further relief as the Court may find just and proper.

Respectfully submitted, this the 16th day of May, 2023.

/s/ S. Chase Parker
S. Chase Parker
BPR No.: 037253
cparker@smithlaw.com
Kirk G. Warner
(*pro hac vice* motion forthcoming)
N.C. State Bar No. 16238
kwarner@smithlaw.com
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Ph: (919) 821-1220

***Attorneys for Petitioner/Plaintiff***